T. V. BOARD ET AL. v. TEXAS AND PACIFIC R. W. Co. AND OTHERS.

1. PARTIES.—In a suit by tax-payers of a county, to annul proceedings of the County Court authorizing the issuance of bonds of the county, and to enjoin the collection of taxes to pay interest on such bonds, the bondholders are necessary parties.

2. LIS PENDENS.—Discussed; and intimation that *lis pendens* would be notice under our statutes from the filing of the bill or petition, where reasonable diligence was had to obtain service of citation, either by personal service or by publication.

3. COUNTY BONDS.—Such bonds must be treated as commercial paper, and their holders entitled to the privileges and immunities attaching to negotiable instruments. They are not, therefore, within the rule of *lis pendens.*

4. PRACTICE.—The allegation that county bonds had been fraudulently issued and delivered to the railroad company, and by it had been passed to parties, with full notice of the fraud, will not obviate the necessity of bringing the bondholders before court as parties.

5. SAME.—To confer power to annul such bonds, the holders should be parties, and the instruments brought under the control of the court, so as to await its action upon their validity, &c. Courts do not sit to determine abstract principles, but to decide practical issues, and to settle issues in which the litigants have a substantial or immediate interest.

6. COUNTY BONDS.—Nor will the court, as against the railroad, annul the bonds, as against the county, and adjudge that payment therefor be provided by the railroad; such action would impair the rights of the bondholders.

7. MANDATORY INJUNCTION.—See allegations held insufficient to warrant its issuance.

APPEAL from Harrison. Tried below before the Hon. M. D. Ector.

The opinion contains a statement of the case, as acted on by the court. A history of the litigation is given in the briefs of counsel, which are given entire.

*H. McKay & W. S. Coleman,* for appellants.—Appellants submit that plaintiffs' pleadings show a good cause of action. Assuming, upon demurrer, all the allegations in plaintiffs' pleadings to be true, the pleadings show that the County Court had no authority in law to submit to the voters of said county the proposition submitted and voted upon, because the proposition submitted and voted upon was not within the scope or meaning of the Constitution or laws of this State upon the subject of aid to railroads or works of internal improvement; and that upon the proposition submitted, no valid election could have been ordered or held, and none such was ordered or held. The petition shows that the proposition submitted to the voters of said county was not one

to aid in the construction of a work or works of internal improvement in the State of Texas. Appellants say that the County Court could not, by law, submit any other. (The proposition being whether the county will donate to the Texas Pacific Railroad the sum of three hundred thousand dollars in the bonds of the said county, &#42; &#42; &#42; to aid in the construction, &c., conditioned that the eastern terminus of said road be established at Marshall, &c.) See Constitution, 1869, art. 12, sec. 32; Paschal's Dig., art. 7369 *et seq.*

Appellants say, that plaintiffs' pleadings show that there was no valid order by the County Court for an election, and that there was no valid election upon said proposition, because the order of the County Court directing the manner of said election, and the manner in which said election was held, was contrary to the Constitution and laws of the State, then of force. (See Constitution 1869, art. 3, sec. 1, and art. 6, sec. 1, and Paschal's Dig., art. 7372.)

Appellants submit that their pleadings show that it was not lawful for the County Court or any other authority to issue to said company the bonds of said county, because the pleadings show that less than the number of votes required by law were cast for said proposition, in this: that less than two-thirds of the qualified voters of said county voted for said proposition.

And we submit that the petition shows that the issuance of said bonds was unlawful, because the said railway company did not accept the proposition submitted to and voted upon by the electors of said county, but that said company refused to accept it, and made its acceptance dependent upon the happening of a contingency beyond the control of said county; and that said company neither did do, nor undertake or promise to do, any act or thing which it was not required to do by the positive requirements of its charter; so appellants say that there was no consideration whatever for the issuance of said bonds, and that this appears from plaintiffs' pleadings.

(See Laws, chartering and amending the charter of said company, Acts of March, 1871, and May, 1872.

Appellants submit that their pleadings show a good cause of action, in this: that they show that the said company had failed to comply with the material and important terms contained in the proposition submitted to and voted upon by the electors of said county.

Plaintiffs' pleadings show a great fraud perpetrated by one of the defendants, the said railway company, by and through its agents and officers upon the plaintiffs, with the purpose and intent of fraudulently obtaining from said county the large sum of three hundred thousand dollars, in the bonds of said county, without any consideration or benefit to said county or its citizens, or to the plaintiffs, and without any right to said bonds, to the great and irreparable damage of the plaintiffs. The plaintiffs' amended petition shows that after the filing of the plaintiffs' original petition, the said railway company, in pursuance of its fraudulent purpose, and by its fraudulent devices, did obtain from the presiding justice of the said County Court the bonds of the said county, to the amount of the said sum of three hundred thousand dollars, and by fraud obtained the registration of said bonds by the comptroller of public accounts of the State of Texas, and that the said company sold said bonds to parties charged with, and actually possessed of knowledge of all the frauds connected with the issuance and registration of said bonds.

Appellants respectfully submit, that the pleadings in this cause abundantly show an eminently proper case for the intervention of the powers of the District Court, to prevent a great and irreparable wrong to plaintiffs, that could in no other way be reached, and that that court erred in sustaining the defendants' demurrer and in dismissing plaintiffs' suit. (See Constitution 1869, art. 5, sec. 7; Dobbin *v.* Bryan, 5 Tex., 276; Newson *v.* Chrisman, 9 Tex., 113; and Lott *v.*

Ballard, 21 Tex., 167, which authorities, we think, support this view.)

Upon the matter of the non-acceptance of the terms of the proposition by the railway company, appellants respectfully refer the court to 1 Parsons on Contracts, 400, and to Story on Contracts, paragraphs 380, 381, and to High on Extraordinary Remedies, paragraph 391.

In support of the allegations in plaintiffs' pleadings, that the conditions named in the proposition submitted to the electors had not been complied with by the railway company, appellants respectfully and specially invite the attention of the court to the opinion of the Supreme Court of the United States, in the case of the Town of Concord *v.* Portsmouth Savings Bank, rendered at October Term, 1875, and reported in the Central Law Journal, of date July 2, 1876, p. 350;—the question of the rights of innocent holders not entering into the consideration of the case before the court, as it will be seen from the transcript that this suit was filed before the bonds were issued, and long before they were registered in the office of the comptroller of the State, and without which registration the bonds were not negotiable. For these reasons, appellants submit that the judgment of the court below should be reversed, and the cause remanded.

*Stedman & Sexton,* for appellees.—The appellees respectfully submit that the decision of the court below is correct, and should be in all things affirmed.

I. The petition of the plaintiff was for an injunction. It asked no other remedial process. Plaintiffs failed to obtain the injunction asked for, because they could not give the required bond. The answers of the defendants and the amended petition of the plaintiff show that the action of the County or Police Court of Harrison county—to wit, the issuing of the bonds described in the original petition—was fully accomplished before the case came on to be heard. Defend-

ants insist that they were issued before the filing of the original petition. The petition being for an injunction only, it was *functus officio* when the action it sought to restrain, was performed.

"If the injury be already done, the writ can have no operation, for it cannot be applied constructively, so as to remove it." (Hill. on Injunc., p. 6, sec. 5, referring to Attorney General *v.* New Jersey, 2 Green, 136; Cobb *v.* Smith, Wis., 661.)

II. The action of the County Court of Harrison county, in issuing the bonds referred to in the original and amended petitions, cannot be inquired into, in the manner proposed by this suit.

The "act to authorize counties, cities, and towns to aid in the construction of railroads and other works of internal improvements," (Paschal's Dig., art. 7369, *et seq.*,) confers upon the County Court full power and authority to submit the proposition, in the first instance, to the voters of the county, and then to determine whether or not all the provisions of the law were complied with. All the questions presented by the plaintiffs in their petitions in the court below, and by their brief in this court, were proper for the consideration of the County Court of Harrison county, were considered and decided by that court, and its action in regard to them was the action of a court of competent jurisdiction upon matters which it was authorized by law to determine. That court has determined, finally, all the questions presented by the appellants. There was no appeal from its action by the appellants who were in that court, (the County Court of Harrison county,) and contested the application made for the bonds by one of the appellees here. We think no appeal was provided by law from the action of that court. If its action could be reviewed at all, which we are not required to deny, certainly it could not be done by an injunction. We believe this court has, in effect, decided this question, in an opinion rendered at the Galveston Term, 1876, in the case of Austin

*v.* The Gulf, Colorado, and Santa Fe R. R. Co., 35 Tex., to which we refer. We refer to the case of "The Town of Coloma *v.* Evans," decided by the Supreme Court of the United States, October Term, 1875, (Central Law Journal for May 19, 1876, p. 325,) and "Marcy *v.* The Township of Oswego," (Ib., for June, 1876, p. 389.)

III. The suit was to enjoin the issue of the bonds, and for that purpose the County Court, as well as the railroad company, were made parties; but before the plaintiffs placed themselves in a condition to demand the writ, the court acted, and the bonds were delivered. The effect of this was to dismiss the County Court from the suit as a necessary party. The petition then proceeds to show that the railway company had parted with the bonds, which, so far as the injunction is concerned, likewise dismisses the company as a necessary party.

The writ of injunction will not issue to prevent a prospective injury, unless it appear that the danger is immediate, and will be likely to occur unless the writ be granted. (See Hilliard on Injunction, pages 8, 9, secs. 6, 7.)

But the amendment goes further: it shows that the sheriff, who was made a party, has no direct interest in the suit, except as a ministerial officer, charged with the performance of a duty, and shows that the bonds have been traded to persons who are not parties.

The real parties in interest are the bondholders; and before their rights can be adjudicated in any manner, they must be made parties. (Story's Eq. Jur., vol. 2, sec. 1529.)

The only remaining question arises on that portion of the amendment that seeks to make the railway company provide a fund for the redemption of the bonds and the payment of the interest accruing thereon. In our present view of the case, it is unnecessary to discuss whether the railway company could in any event be made to provide for the bonds. It is only necessary to say, that by this amendment the original cause of action is abandoned, and an entirely new action

commenced.    The plaintiffs have not paid the cost, nor offered to pay.

An original cause of action may be changed, altered, or amended, under our system of pleading, so as entirely to change the purposes for which the suit was instituted; but in that event, the party must place himself in the same situation as if he had dismissed his first suit and brought another; and it has been even held, that where the action is changed by amendment, the statute of limitations runs against the new cause up to the date of the filing of the amendment.    (See 1 Tex., 605; 15 Tex., 127; 17 Tex., 34; 8 Tex., 46; 7 Tex., 57; 13 Tex., 464.)

In no possible event can the appellants maintain any character of action until they can aver and prove that the payment of the tax has been demanded and refused, and then that the payment of it is about to be enforced by levy and sale of property; and then the action must be brought on behalf of themselves and all other tax-payers of the county. (Dows *v.* The City of Chicago, 11 Wallace, 108.)

MOORE, ASSOCIATE JUSTICE.—This suit was brought by appellants, citizens of Harrison county, to annul certain proceedings had in the County Court of said county, ordering that bonds of said Harrison county for $300,000 should be issued and delivered to appellee, the Texas and Pacific Railway Company, as a donation by said county, to aid in the construction of its railway, and to enjoin the clerk of the County Court from attesting said bonds, the chief justice of said county from issuing, and said railway company from demanding and receiving them.

On an application to Hon. M. D. Ector, judge of the sixth judicial district, in which said county of Harrison is situated, before the filing of the petition, an order was made by said judge in chambers, that an interlocutory injunction, as asked for, should be issued on the petition being filed, and bond for the sum of $100,000 being given by plaintiffs.    The

plaintiffs, however, failed to give bond as required, and consequently the injunction prayed for was not issued.   But the petition having been filed, on the 6th of June, 1874, citations were issued which, on the 8th of said month, were regularly served upon the defendants, who in due time entered their appearance and answered the petition.   And at the January Term, 1876, of the District Court for Harrison county, the case came on to be heard on a demurrer of the defendants to the petition; and the court holding the demurrer well taken, the plaintiffs amended their petition, and, among other things, alleged that said Texas and Pacific Railway Company had fraudulently procured all of said bonds, referred to in the original petition, to be signed by the chief justice of said County Court, and to be countersigned by said clerk and attested with his official seal; and that said chief justice had delivered them to the comptroller of the State, by whom, after they were registered and indorsed, they had, on or about the 10th of May, 1874, been delivered to said railway company; and that said company having, by illegal means and devices, obtained possession of said bonds, with the fraudulent intent and purpose of preventing the legality of the proceeding whereby they were procured to be issued from being inquired into, had, on to wit, about the 30th day of May, 1874, transferred and assigned all of them to some person or persons to plaintiffs unknown, for the full face value thereof; but that said persons to whom said bonds had been so transferred by said company and the then holders of them, took them with full notice of the fraudulent practices and devices, by means of which said bonds were caused to be issued, and by which their delivery to said company by the comptroller was procured.

The relief prayed for by the plaintiffs in their amended petition is, in substance, that all the orders and proceedings of the County Court in the premises be held void and of no effect; that all of said bonds be adjudged and declared null and void, and the special tax levied by said County Court

for their payment be revoked and repealed; or if it should be found that said bonds had gone into the hands of innocent parties, without notice of said frauds, whereby they were procured, and that in law and equity they should be paid to the parties holding them, they pray, in that event, that said Texas and Pacific Railway Company "be adjudged and held to provide for the payment of the same," &c., and that the order of the County Court levying a special tax for this purpose be annulled.

To the petition as amended, the defendants again excepted, and their exceptions were sustained; and plaintiffs declining to further amend, final judgment was given by the court against them on the exceptions.

It is altogether unnecessary, in the attitude in which they are presented in this record, for us to consider or undertake to determine the several questions mainly discussed by appellants' counsel, touching the validity of the bonds, to enjoin the issuing of which the suit was first brought. Whatever conclusion we might be inclined to form as to them, we think it manifestly appears from the petition and amended petition that the parties interested in the subject-matter of the suit are not before the court. If it is conceded that the judgments or orders of the County Court, brought in question by appellants, can be reviewed, and if found to be erroneous or unauthorized, revoked and annulled by an original suit, brought for this purpose in the District Court by an inconsiderable fraction of the citizens and tax-payers of the county, evidently the holders and owners of the bonds are immediately and directly interested in the suit, and should be made parties to it.

Appellants' counsel do not deny or attempt to controvert this well-established elementary principle. They maintain, however, that it is inapplicable in this case, because, as they say, appellees, the defendants in the court below, were the only parties having or claiming any interest in upholding or maintaining the validity of the judgments, orders, and pro-

ceedings of the County Court which they desire to review, or who claimed any right to or interest in the bonds which appellants were seeking to have canceled and annulled when the suit was instituted; and although they allege in their amended petition that the bonds had been transferred by appellees to the then holders of them, for their full face value, yet, as it appears they must have been so transferred after the filing of their original petition, the holders acquired whatever interest they have to them *pendente lite*, and are not therefore, as they maintain, entitled to be made parties to the suit, but must abide its result against those from whom they purchased.

If the rule of *lis pendens* is applicable to the persons to whom appellants allege, in their amended petition, these bonds were transferred by the. Texas and Pacific Railway Company, unquestionably the objection that these parties have not been brought before the court is untenable.     It may, however, be well questioned whether there was a *lis pendens*, such as operated as constructive notice to the purchasers at the time these bonds were transferred.     The determination of this point depends upon whether *lis pendens* begins from the filing of the petition or the service of the citation.     This question, as far as we are aware, has not attracted the attention of this court; but elsewhere it seems to be generally held to commence, unless it is otherwise provided by statute, from the service of the subpœna and the filing of the bill.

Says Chancellor Kent, who, by his decision in the case of Murray *v.* Ballou, 1 Johns. Ch., 566, seems to have first grafted this doctrine into American jurisprudence : "The *lis pendens* begins from the service of the subpœna after the bill is filed."     And says Mr. Commissioner Earl, in the case of Leitch *v.* Wells, 48 N. Y., 585 : "I therefore hold that there. is no *lis pendens*, so as to give constructive notice to strangers, until a summons has been served, and a complaint, distinctly stating the subject of the litigation and specifying the claim

made, has been filed in the proper clerk's office." "The rule," he adds, " as thus stated, is sufficiently hard and unreasonable." And says Mr. Freeman, in his valuable work on Judgments: "While *lis pendens* can in no case commence at common law until process is issued and served, a constructive service produces the same effect as a personal service. Whenever the service may be made by publication, the *lis pendens* is complete upon the actual publication of the notice for defendant to appear; but it seems there is no *lis pendens* until the order for publication is fully executed. The acceptance of service, as of a prior date, in pursuance of a previous agreement, will not bind any lands conveyed prior to the time when the acceptance of service was in fact made. Where a defective subpœna was served, and afterwards the service was set aside and the subpœna amended so as to bear date the day the service was set aside, it was held that *lis pendens* did not begin until service of the amended subpœna." (Freem. on Judg., sec. 195, and cases cited.)

It should be observed, however, that in some of the courts, where it is held that constructive notice of *lis pendens* dates from the service of the subpœna and filing of the bill, the suit or action is begun by issuing the subpœna, or other process, and not as with us, by the filing of the petition or bill setting forth the cause of action. Hence, a stranger to the action would have an opportunity of informing himself of the existence and nature of the suit here by the filing of the bill, which would not be afforded merely by service of a subpœna. And it may be that public policy, from which this rule springs, should give it effect with us from the filing of the suit, if due and reasonable diligence in procuring service and prosecuting the suit is shown.

But, as there is another answer to appellants' position, that the parties to whom these bonds were transferred pending the suit are subject to the rule of *lis pendens*, which is conclusive, we need not at present make an authoritive decision as to the time at which, with us, it begins.

Whatever difference of opinion there may have been in the professional mind in regard to securities of the character of these bonds, it must be conceded that it is now too well settled, by the overwhelming weight of judicial decision, for those entertaining a different opinion, to maintain that they should not be treated as commercial paper, or that the holders of them are not entitled to the privileges and immunities attaching to negotiable instruments. (Dillon Muncip. Corp., sec. 405; note Daniel on Nego. Inst., sec. 1500, and cases cited.) In the courts of Pennsylvania alone, it is believed the contrary doctrine is still maintained. The Supreme Court of that State, while denying that such bonds are negotiable instruments, says: "We have said on several former occasions, that we will not treat bonds like these as negotiable securities. On this point we stand alone. All the courts, American and English, are against us." (Diamond *v* Lawrence County, 37 Penn. St., 353.)

And there is not even one solitary exception to the universally recognized rule that negotiable instruments are not within the rule of *lis pendens*. "There is no case," says Mr. Powell, in his work on mortgages, (2 vol., 618,) "in which equity has determined the property in goods to be effected by reason of a *lis pendens*, where possession is the principal evidence of ownership, as of personal chattels." And Mr. Freeman, while he insists that it must be conceded that at this day *lis pendens* applies with equal force to controversies in regard to personal property, as in real actions, and that commercial paper not past due is the only exception to the universal application of the rule, says: "The necessity of preserving the negotiable character of negotiable paper not due, so as to require no inquiry beyond inspection of the paper itself, in relation to its ownership, has frequently been considered paramount to the necessity of avoiding transfers *pendente lite*, and that class of paper is the only property not liable to the doctrine of *lis pendens*." (Freeman on Judgments, sec. 194; Kriffer *v*. Ehler, 13 Penn. St., 388; Dia-

mond *v.* Lawrence County, 37 Penn. St., 353; Day *v.* Zim-
merman, 68 Penn. St., 72; Murray *v.* Lylburn, 2 Johns. Ch.,
441; Winston *v.* Westfeldt, 22 Ala., 760.)

It is also insisted by appellants, as it is alleged in the
petition, that the holders took the bonds with full knowledge
of the frauds through which they were procured; and as they
hold them by no better title than did the Texas and Pacific
Railway Company before they transferred them, they are
open to the same defenses in their hands as in the company's,
and therefore the holders need not be made parties. But
this is no answer to the objection that the holders of the
bonds should be parties to the suit; for if they have no
better title to them than said company, they are nevertheless
entitled to be heard before a decree is made in any way
affecting their rights.

And even though the parties to whom the bonds were
transferred had notice of the fraud by which they were
procured, if they were in fact procured by fraud, how can the
court know that they will not pass into the hands of innocent
parties before the case is tried, and that its judgment will be
either inoperative and useless, or injuriously affect the rights
of parties who have had no notice of the suit, and no oppor-
tunity of being heard in vindication of their rights. "When
such paper is the subject of the suit, the court ought to
require it to be brought into court, or so placed that the
defendant cannot commit a fraud upon the law by making
the judgment unavailable." (Freeman on Judg., sec. 194.)
And it would seem, unless the plaintiff will take the neces-
sary steps to have this done, he would have no right to ask
the court to render an unavailable judgment. Courts do not
sit to determine abstract principles, but to decide practical
issues, and settle controversies in which the litigants have
a substantial or immediate interest.

It remains to inquire, as it is held that the court did not
err in holding that plaintiffs' petition was insufficient to
warrant a judgment annulling the bonds, should it have

given the alternative judgment prayed for by the defendants, viz, that the Texas and Pacific Railway Company be compelled to pay the principal and interest of said bonds, and that the tax assessed for this purpose be repealed ?

That a judgment of this kind is not authorized by anything in the petition, is, we think, too obvious for discussion. To repeal the tax for the payment of the principal and interest of the bonds, would impair the rights of the bondholders, is beyond question. The plaintiffs have no right to ask the court to require them to accept a different security for the payment of the bonds to that given by law. The judgment asked is of an extraordinary character. It could probably be only made effective through a mandatory injunction, by which the company, under penalty of attachment, would be required to pay to the collector of taxes the amount annually assessed for the payment of the bonds. The plaintiffs have no interest in this matter beyond the amount of their own assessment. They do not allege how much this is, or that payment of it has been demanded of them; or, if they should be wrongfully compelled to pay said tax, that there is reason to fear that they will thereby suffer irreparable injury. Nor do they show any reason whatever for the interposition of a court of equity, and the granting of the extraordinary and unusual relief asked for.

The judgment is affirmed.

AFFIRMED.