# SUPREME COURT OF TEXAS.

## TYLER TERM, 1880.

INTERNATIONAL & G. N. R. R. Co. v. SMITH COUNTY ET AL.

(Case No. 882.)

1. CONSTITUTIONAL LAW — TAXATION.— That portion of the act of August 21, 1876, entitled "An act to define the duties, powers, qualifications and liabilities of assessors of taxes, and to regulate their compensation," which refers to boards of equalization, is not violative of the constitution; it is not disconnected with, or inappropriate to, the general object of the act as expressed in the title. The duties of the assessor and of the board of equalization are closely connected, mutually dependent, and conveniently and appropriately defined in the same statute.

2. CASES APPROVED.— Houston & T. Central R. R. Co. v. Presidio County, 53 Tex., 518, approved.

3. TAXATION — BOARD OF EQUALIZATION.— The board of equalization was created by the constitution itself, and its duties were sufficiently defined in the act of August 21, 1876, to make it competent to determine the valuation of property listed, when that question was properly referred to it, either under section 5 or section 17 of that act.

4. TAXATION.— When a tax-payer renders his tax list to the assessor in person, and after answering all questions by him, subscribes the oath prescribed by the statute, if the assessor, for cause deemed sufficient, proceeds then and there to change the valuation, and the tax-payer then makes oath that the valuation is excessive, the case is one coming within the provisions of section 17 of the act of 1876. If, however, the valuation be forwarded by mail, oath being made to the list, out of the county in which it is rendered, before some other officer, the case is then under the provisions of section 5, and the assessor, if dissatisfied, is neither required or empowered to affix a valuation, but should refer the same to the board of equalization. If forwarded, not by mail, but conveyed by another party, it would still be under section 5.

5. Injunction.— A party seeking by injunction equitable relief against an alleged unauthorized action by the board of equalization, must establish clearly facts showing that the board had acted illegally and without authority.

6. Taxation.— If the board of equalization, in determining the proper valuation of property listed for taxes, errs, and affixes a valuation deemed by the tax-payer excessive, that fact gives him no right to resort to the courts for relief.

7. Query.— Whether, if the tax-payer should show that in the proper time and way he demanded, and was refused by a board of equalization, permission to be heard, and to adduce evidence that their valuation was excessive, the courts would grant relief, *quære?*

Appeal from Smith. Tried below before the Hon. John C. Robertson.

The opinion states the case.

*Tignal W. Jones*, for appellant.

I. Under the pleadings and evidence in the case, the plaintiff has no adequate remedy at law unless it is afforded either by the act of the legislature of the 21st of August, 1876, or the Revised Statutes of Texas of 1879. George *v.* Deen, 47 Tex., 73; High on Injunctions, §§ 353, 354, 362, 367, 368; Ritter *v.* Patch, 12 Cal., 298; Missouri River, Fort Scott & Gulf R. R. Co. *v.* Morris, 1 American Railway Reports, 353; Kansas Pacific R. R. Co. *v.* Russell, 5 id., 232; M., H. & O. R. R. Co. *v.* City of Marquette *et al.,* 16 id., 179; Connors *v.* Detroit (40 Mich., 1879), 8 Reporter, 335. See, also, Burroughs on Taxation, pp. 363–370.

II. The boards of equalization provided for by the constitution of Texas are courts, and not assessors of taxes. See art. 8, sec. 18 of the constitution of Texas, in which it is provided that the county commissioners' courts shall constitute boards of equalization. Burroughs on Taxation, secs. 101, 102, pp. 235–239.

III. So much of the act of the legislature of Texas, of the 21st of August, 1876, as refers to boards of equalization, is unconstitutional, because it contains more than

one subject in the body of the bill, one of which is the subject of boards of equalization, and this subject is not expressed in the title to the act.

IV. The board of equalization of Smith county, that raised plaintiff's assessment of its property for the years 1877, 1878 and 1879, acted under the statute of the 21st of August, 1876, and that although their action was illegal and void, it was nevertheless under legal color and apparently authorized by law, and that, therefore, the remedy by bill of injunction was the proper remedy.

V. The act of the legislature of the 21st of August, 1876, under which the board of equalization of Smith county acted in raising the assessments of plaintiff's property, in said county, for 1877, 1878 and 1879, does not provide for the organization of county commissioners as boards of equalization, nor for the manner in which the taxes shall be equalized, and therefore that the action of the board of equalization of Smith county in raising plaintiff's assessment for those years, is null and void. See, also, State Const., art. 8, secs. 14, 18; Burroughs on Taxation, pp. 23, 238; Houghton v. Austin, 47 Cal., 646; People v. Placerville, 34 Cal., 636.

VI. A board of equalization, organized under the act of the 22d of March, 1879, which took effect July 24, 1879, has the power to correct any errors in an assessment, made by an assessor of taxes, any time before the tax is paid on the property, except in a case where a person listing property makes oath to it and presents it to the assessor, and the assessor is dissatisfied with the person's assessment, and lists the property at such value as he, as a sworn officer, deems just, and the person listing the property makes oath that the assessment, made by the assessor, is excessive, and the value of the property is decided by the board of equalization; or in a case where a board of equalization, in supervising the assessments of its county, is satisfied that the valuation of any property

is not just and fair, and increases or diminishes the same, and fixes a proper valuation thereto, when the action of the board of equalization becomes final and cannot be reviewed, either by itself or any other tribunal.  R. S., Appendix, p. 25, sec. 3 of the act of 22d of July, 1879, and arts. 4714, 4715, of R. S., p. 689.

VII. If the act of the legislature of the 21st of August, 1876, under which the board of equalization of Smith county acted, in raising plaintiff's assessments of its property in Smith county for the years 1877, 1878 and 1879, is constitutional, as to the boards of equalization mentioned in said acts, and the acts of the said board, in raising plaintiff's assessments, are not null and void, then the board of equalization of Smith county, organized under the law of 1879, can no more review the action of the board organized and acting under the act of 21st of August, 1876, in reference to plaintiff's assessments of its property in Smith county for 1877, 1878 and 1879, than it could its own action in similar cases, arising under the laws of 1879, and that, therefore, the law of 1879 affords no remedy for plaintiff's grievances.  R. S., arts. 4714, 4715.

*Newton & White*, for appellees.

Gould, Associate Justice.— The railroad company sought and obtained an injunction against the collection of that portion of the taxes on its property in Smith county for the years 1877, 1878 and 1879, in excess of the assessments rendered by the said company for those years, which were created by the board of equalization in its action during those years respectively on the said company's assessments.

On the final hearing of the case, a jury being waived, the court gave judgment against the railroad, refusing to perpetuate the injunction, and the company appeals.

The purport of the evidence, in so far as it is material to be stated, is thus given in the brief of appellant:

That the plaintiff listed and inventoried all of its property in Smith county in the years 1877, 1878 and 1879, previous to the first day of June of each of said years, said property consisting of 39 4–10 miles of railway, rolling stock and appurtenances, and valued the same for the years 1877 and 1878 at $290,161 each, and for 1879 at $279,240; that the inventories for 1877 and 1878 were duly sworn to before a notary public of Anderson county, Texas, by Ira H. Evans, plaintiff's secretary; and the inventory for 1879 was duly sworn to by R. S. Hayes, receiver of said plaintiff, before a notary public of Anderson county; and that each one of said inventories was sent by the plaintiff, by D. S. H. Smith, the treasurer of plaintiff, and delivered by him to the assessor of taxes for Smith county; that said assessor received the said inventories from said Smith, informing him that he would not accept the valuations made, but would take them and refer them to the board of equalization, as he believed the valuation in said inventories too low; that the assessor did not change the valuation, as made in said inventories by plaintiff, but said he was not a judge of the value of railroads, and would refer them to the board aforesaid; that the said Smith inquired when the board would sit, and the assessor told him he did not know, but, at Smith's request, promised to write to him and let him know; that plaintiff made no affidavit of dissatisfaction, and that the assessor, about the month of June of each of the years 1877, 1878 and 1879, turned over said inventories with all his other assessments to the commissioner's court of the county, sitting as a board of equalization; that the assessor, according to his promise, wrote to the said D. S. H. Smith, treasurer of plaintiff, informing him when the said board of equalization would meet, and that he attended two meetings of

the board in 1877; that the said board took charge of said inventories, with all the others turned over to it, and acted on them without any process served on the plaintiff, or any notice served on it by said board; that in 1877, when the board met, it adopted as a rule, that it would not hear evidence introduced by parties concerned, nor allow issues to be formed or argument of counsel to be heard on the question of increasing the valuation of property already assessed; that plaintiff was before the board on two separate occasions in 1877 by its treasurer, D. S. H. Smith, as aforesaid, and one time by another officer of plaintiff; and that during the interval of the two occasions referred to when plaintiff was before said board, one of the members of the board went over plaintiff's said road and looked at the same with a view to the valuation thereof; that plaintiff was not represented before said board in 1878 or in 1879; that in 1877 and 1878, the board of equalization had no clerk, kept no written minutes or record of its proceedings, but when it made a change in the valuations, it was done by entry on the inventories; that the board raised the valuation fixed by plaintiff in 1877 from $290,161 to $591,000; in 1878, from $290,161 to $453,100; and in 1879, on the 23d day of July, the said board, by a written order on the minutes, raised the valuation fixed by plaintiff from $279,240 to $453,100; that at the time the assessor turned over the inventories, as made by plaintiff, of its property and others of their property, he turned over to said board a roll made out from said inventories, and that when the board had acted on the inventories and made changes in them, it directed the assessor to make out a new roll in accordance with the changes made by the board; that about this time the comptroller was writing to the assessor and urging him to send forward his rolls; that the comptroller was notified that new rolls would have to be made to conform them to the action of the

board of equalization, and that the comptroller issued a circular letter to assessors, dated August 1, 1877, instructing them to withdraw the inventories from the board of equalization and to disregard what they had done; that said circular letter was based on an opinion of the attorney general, and is as follows:

*Circular to County Judges, County Attorneys and Tax Assessors.*

COMPTROLLER'S OFFICE,
AUSTIN, TEXAS, August 1, 1877.

Information has been received at this office that the boards of equalization in many counties in this state have increased the values of property on the inventories taken by assessors in cases where there was no appeal by taxpayers, as provided in section 17 of the act of August 21, 1876; and also in cases where the valuations of property, as rendered by the owners, were accepted by the assessors. The powers of the boards of equalization to increase the values of property assessed, as stated in the foregoing paragraph, having been questioned, the matter was submitted to the honorable attorney general for his official opinion, and the following is his reply:

ATTORNEY GENERAL'S OFFICE,
AUSTIN, July 27, 1877.

Hon. H. S. DARDEN, Comptroller, Austin:

*Sir* — I have the honor to acknowledge the receipt of your favor of the 22d ult., and in reply thereto, to say that, in my opinion, the boards of equalization are not authorized to alter the assessments of value made by the assessor of taxes except in the manner provided in section 17 of the act of August 21, 1876 (Gen. Laws, 1876, p. 270).

The constitution provides that the "legislature shall provide for equalizing, as near as may be, the valuation of all property subject to or rendered for taxation." Sec. 18, art. 8. This, the legislature has failed to do.

The article above referred to evidently contemplates the passage of a law regulating this matter, and prescribing the duties and defining the powers of this board, but as no such law has been passed the system is incomplete.

Very respectfully, your obedient servant,

H. H. Boone, Attorney General.

In view of the grave difficulties that may arise on account of the increased values placed on property by the boards of equalization in cases where the valuations of the owners have been accepted by the assessors, and in cases where no appeal has been made to said board by the parties rendering, it is deemed advisable to instruct assessors as follows:

1. In all cases where the values of property have been given by the owners or agents, as provided for by law, and which have been accepted by the assessor; and in cases where the assessors have fixed the values of property, and no appeal has been taken by the tax-payer to the board of equalization, as provided for in section 17 of the act of August 21, 1876, assessors will place these values on the assessment rolls. The increased values made by the boards of equalization in the above class of cases must not be entered on the rolls.

2. As assessors in many counties have completed their rolls, and in many counties their work is in progress, this difficulty is to be regretted. But notwithstanding the inconvenience attending the rectification of the value of property, yet immediate action is necessary. Assessors will erase from their rolls all values of property made in the above class of cases by the boards of equalization, and place such values as have been accepted by them, or from which no appeal has been made to the board of equalization by the tax-payer, on the rolls. The erasure of the values improperly placed on the rolls can be made by drawing a mark through the values and writing the correct value in the same line above the erasure. The tax

should be also altered to correspond with the proper value. County judges and county attorneys are respectfully requested to bring these matters before the boards of equalization of their respective counties, and ask coöperation with this office in securing such rectification of the rolls as will leave no question as to the legality thereof.

It is of the highest importance to the interests of the state and the counties that there should be no doubt as to the legality of the assessments. The action taken by the boards of equalization in the cases designated herein, if not remedied, may vitiate the entire assessments, and cause a suspension of the collection of the taxes for the next year.

It is confidently trusted that the boards of equalization will see the propriety of this action, in view of the consideration herein set forth, and that their acquiescence with the advices from the attorney general will be given, and that said boards will formally approve the assessment rolls with such values of property as may be entered thereon by assessors in compliance with the law as herein interpreted.

In cases where assessors have sent their rolls to this office they will make requisition for the same, in case there are any changes necessary to be made on said rolls, in accordance with the instructions herein given.

W. A. PITTS, Chief Clerk,
Acting Comptroller.

The assessor of Smith county made several efforts to obtain the rolls and inventories from the board of equalization in pursuance of this circular, but the board refused to give up the rolls and inventories unless the assessor would adopt the valuations made by the board, saying that the board had no authority to control the same or order them out of the custody of the county clerk; that finally, under the direction of the comptroller, the assessor adopted the work of the said board and received the

rolls and inventories for 1877, but that he believed the board had fixed the valuation rather too high.

It was also proved by the collector, that had he not been enjoined he would have sold plaintiff's said road for the taxes; that the taxes for 1877, 1878 and 1879, as valued by plaintiff, had been fully paid; that the taxes above those amounts and up to the amounts assessed by the board of equalization had not been paid, and that these increased amounts is the tax that the collector was attempting to collect, and for which he has levied on plaintiff's said property.

There was no evidence tending to show the correctness of the valuation at which the property was given in, and the excessiveness of the valuation affixed by the board of equalization.

The first question which it is proposed to pass upon arises under the following proposition submitted by counsel for appellant: That so much of the act of the legislature of Texas, of the 21st of August, 1876, as refers to boards of equalization, is unconstitutional, because it contains more than one subject in the body of the bill, one of which is the subject of boards of equalization, and this subject is not expressed in the title to the act.

The title to the act is as follows: "An act to define the duties, powers, qualifications and liabilities of assessors of taxes, and to regulate their compensation." General Laws of Texas, 1876, pp. 265–273.

The act provides for the election and qualification of assessors, and in defining their duties prescribes the various steps to be taken in the assessment of property for taxes, including the reference to the board of equalization of the question of valuation, in certain cases where the assessor and person listing the property differ as to its true value, and indicating subsequent action to be taken by the assessor.

Sections 5 and 17 of the act are as follows:

"Sec. 5. The assessor of Texas shall also require each person rendering a list of taxable property to him for taxation, under the assessment laws of this state, to subscribe the following oath or affirmation, which shall be written or printed at the bottom of each inventory, to wit: "I —— (filling the blank with the name of the person subscribing) do solemnly swear or affirm that the inventory rendered by me contains a full, true, and complete list of all taxable property owned or held by me in my own name (or for others, as the case may be, naming the person or firm for whom he rendered the list) in this county, and all personal property in this state, on the first day of January, A. D. 18 — (filling the blank with the year), and that I have true answers made to all questions propounded to me touching the same, so help me God." The owner or agent who is required under the laws of this state to render any property for taxation, may render the same in the county where the same is situated, by listing the same and making oath thereto as required in this act, before any officer authorized to administer oaths in this state, or any officer out of this state that is authorized by law to take acknowledgments of instruments for record in this state, and may forward the same to the assessor of the county by mail or otherwise, and the assessor shall enter the said property on his tax rolls. If the assessor is satisfied with the valuation as rendered in said list, he will so enter the same. If he is not satisfied with the valuation, he shall refer the same to the board of equalization of the county for their action, and shall immediately notify by mail or otherwise the person from whom he received said list, that he has referred said valuation to the board of equalization; provided, said assessor shall not be required to notify said party unless said list is accompanied by a fee of twenty-five cents.

"Sec. 17. In case the person listing property makes oath before the assessor that it is correctly valued, he shall

list the same accordingly; but if the assessor is satisfied that the value is too low, he shall list the same at such value as he, as assessor, deems just; and if the person listing makes oath that the assessment is excessive, the value shall be decided by the board of equalization, whose valuation shall be final; provided nothing herein contained shall prohibit the board of equalization from exercising the right to equalize all assessments made, in accordance with the law governing the board of equalization."

These sections and others containing provisions as to the board of equalization are not disconnected with, or inappropriate to, the general object of the act as expressed in its title. The duties of the assessor and of the board of equalization are closely connected and mutually dependent, and they are conveniently and appropriately defined in the same statute. The act does not, in our opinion, embrace two disconnected subjects. The title might certainly have been more expressive of the subject in its full extent. But to hold its provisions on the subject of the board of equalization unconstitutional, would require a strictness of construction of the constitution not authorized by the decisions of this court, and not necessary in order to enforce the clause referred to, in its true spirit, or so as to accomplish its true object. This act has heretofore been before this court, and was treated as valid. H. & T. Central R. W. Co. v. The County of Presidio et al., Austin Term, 1880. The board of equalization was created by the constitution itself, and its duties were sufficiently defined in the act under consideration to make it competent to determine the valuation of property listed, when that question was properly referred to it, either under section 5 or section 17.

In determining whether the question of valuation was properly referred to the board, it is important to inquire under which section the railroad company proceeded in

rendering its inventory — section 17 or section 5 — and a comparison of these sections becomes necessary. The act contemplates that the assessor shall call "upon the person," . . . "or at the office, place of business or the residence of the person," for the purpose of listing his property for taxes. The ordinary mode of procedure is that the tax-payer then and there renders his list with his valuation affixed; answers under oath all questions touching the same propounded to him by the assessor, and subscribes the oath prescribed by the statute before the assessor, who attests the same. If in such a case the assessor is satisfied that the property is valued too low, and being already sufficiently informed as to its value, or having informed himself by questioning the person listing it, proceeds then and there to value it as he deems just, and the person listing being present, at once makes oath that the assessment is excessive — very clearly the case is one within section 17, in which the value is to be decided by the board of equalization. But undoubtedly that section embraces cases where this ordinary procedure is more or less departed from; and it may be, that if the required oath, having been made before some other officer, is presented to the assessor by the party himself, or by an agent equally empowered and competent to answer the questions of the assessor, and is treated by the assessor as sufficient under section 17, that the procedure would still be under that section, and it would be the duty of the assessor, if dissatisfied with the valuation, to proceed to affix one himself. Where, however, the person who makes oath to the list before some other officer, does so out of the county and forwards the list by mail, the case is clearly under section 5, and the assessor, if dissatisfied, is neither required nor empowered to affix a valuation, but should refer the same to the board of equalization. And although the inventory be forwarded otherwise than by mail, if it be by the hands of some person other than the

one who listed the property, or other than one who appears to be equally authorized to represent the tax-payer, the proceeding would still be under section 5. In such a case the person listing property being regarded as absent, the statute (it has since been modified) secured him the privilege of having his valuation remain unchanged, unless by the board of equalization, the tribunal to which the final decision of disputed questions of valuation was referred. On the assessor devolved in all cases the important duty of accepting or rejecting the valuation affixed by the person listing property. Where that person is in contemplation of law present, and the assessor has the opportunity to inform himself by requiring answers under oath, if satisfied that the value is too low, his duty is to proceed to affix his own valuation, and to do so so promptly, or in such a way as to give the person listing opportunity of making oath that the valuation is excessive, and having that question referred to the board of equalization. But when the person listing is not present, either in person or in contemplation of law, the procedure prescribed is different, perhaps for the double reason that the officer may not be prepared to affix a valuation, and because no one authorized to act for the person listing is present to make oath and refer the matter to the board. In each case the principal object seems to be to secure the party listing property, in the privilege of having the difference between himself and the assessor passed upon by the board of equalization. His valuation could only be changed, save by his own acquiescence, when the assessor and the board both agreed that it was too low. In this respect the statute now provides differently. Gen. Laws of 1879, p. 44; R. S., art. 4715.

In this case the inventories were sworn to before a notary public of Anderson county, in 1877 and 1878, by the secretary of the railroad company, and in 1879 by the receiver, but were forwarded by a different officer, to wit,

the treasurer.   The record does not show that the treasurer was the agent of the company to list its property, authorized or competent to act for it in answering questions under oath touching the list or inventory.   In our opinion it does not sufficiently appear that the railroad company's property was rendered in to the assessor in such a way as to make it his duty, if dissatisfied with the valuation, to do more than to reject it and refer it to the board.

Occupying the position of seeking equitable relief against alleged unauthorized action of the board, it devolved upon appellant to establish clearly, facts showing that the board had acted illegally or without authority. The facts established are insufficient to show with requisite certainty that the railroad proceeded under section 17. Whether the proceeding was so regarded at the time or not, we, for the purposes of this case, must regard it as under section 5, and hold the assessor authorized to proceed under that section.   Speaking for myself alone, I desire to say that even if the treasurer so represented the company as to make the proceeding one under section 17, his failure to demand that the assessor proceed under that section, to affix the valuation deemed just by him, authorized the board to act on the reference of the assessor as if under section 5.

It sufficiently appears that the assessor did reject the valuation, and did refer the question to the board, and that the valuation complained of was affixed by the board of equalization, the appellant having had notice of the reference and time of meeting.

The expressed intention of the law is to make the decisions of the board of equalization final on the question of valuation.   If that tribunal errs, and affixes an excessive valuation, that fact gives the tax-payer no right to resort to the courts for relief.   R. S., art. 4715.

It would seem to be the design of the law that the person rendering property should in some way have an op-

portunity to present his side of the question to the board. In this case it has not been shown that the appellant was denied such opportunity. The adoption by the board of a general rule not to hear evidence or argument, did not amount to such denial. A party desiring the equitable aid of the court on such a ground should show that he at the proper time and in the proper way demanded to be heard, or offered to adduce evidence, and was denied. Whether, if he had made such a showing, the courts would have been empowered to interpose, is a question not now before us.

The case as exhibited by the evidence resolves itself into a complaint of excessive valuation of property assessed for taxes, that valuation not appearing to be made otherwise than regularly and by the proper tribunal. In our opinion, the court did not err in its judgment, and the same is accordingly affirmed.

AFFIRMED.

[Opinion delivered October 22, 1880.]