## THOS. DWYER v. JOHN W. HACKWORTH, ASSESSOR AND COLLECTOR.

### SUPREME COURT, AUSTIN TERM, 1882.

*Public free schools—Control by city—Taxation for support of—Elections—Public school houses—City bonds—Taxation to pay interest—Injunction—Parties—Unauthorized revision of assessments.*—A city assuming control of its public schools has authority to submit to a vote of the property taxpayers the question whether of not there shall be raise l by taxation such an amount, in addition to the school fund received from the State, as may be necessary to conduct the public free schools of said city for ten months in the year, not to exceed one-half of one per cent.

After the result has been declared by the city council, no proceeding having been instituted to contest said election or have the result reviewed, it was not competent to review or inquire into said determination or result in a suit to enjoin the collection of taxes for support of city schools.

By virtue of the vote of the taxpayers and of the statutory provisions, the city council had authority to levy a tax not exceeding one-half of one per cent, for the support of public schools for ten months out of the year, and although the amount raised was greater than was required for that purpose, the discretion of the council in fixing the amount will not be revised.

Where a city assumes control of its public schools, public school houses within the city become public buildings within the meaning of the law, and a tax of one-fourth of one per cent for the erection of such school houses was valid.

Where a city, under its charter, borrows money for general purposes, issuing its bonds therefor, the validity of a tax levied to pay the interest thereon is not affected by the subsequent appropriation of the money borrowed to an alleged unauthorized purpose. Nor is it competent to enjoin the collection of said tax on the ground of the invalidity of the bonds, without making the holders of the bonds parties to the suit.

An ordinance creating a board of assessment to examine and revise the lists of property, after the same had been duly rendered to and accepted, and entered as satisfactory by the assessor and collector, was without authority and illegal.

Appeal from Washington County.—Opinion by Gould, C. J.— Most of the questions presented in this case are settled by the decision in the case of the City of Fort Worth vs. Davis et al. Our conclusions may be briefly stated, as follows:

1. The city council of Brenham, acting under "An act to authorize the cities of Texas to maintain public schools," by resolution adopted April 26, 1875, assumed control of the public schools within its limits. It has not been found necessary to inquire whether the proceeding in September, 1875, to amend the city charter was valid or not.

2. The city having thus assumed control of its public schools, the council had authority, on July 27, 1880, to submit to a vote of the property taxpayers of said city the question whether or not there shall be raised by taxation such an amount, in addition to the school fund received from the State, as may be necessary to conduct the public free schools of said city for ten months in the year, not to exceed one-half of one per cent.

3. Said election having been duly held, the returns canvassed by the city council, and the result declared to be that said tax had carried by the requisite two-thirds vote, no proceeding having been instituted to contest said election or to have the determination of the result reviewed, it was not competent to have said result inquired into, or said determination reviewed in the suit.

4. The city council, by virtue of the vote of the taxpayers and of the statutory provision to this effect, had authority to levy a tax, not to exceed one-half of one per cent, for the support of public schools for ten months out of the year, and although the amount levied and raised proved to be greater than was required for that purpose, the discretion of the council in fixing the amount will not e revised.

5. The city having assumed control of the public schools, public school houses within the city became public buildings, within the meaning of the law, and a tax of one-fourth of one per cent for the erection of such school houses was valid.

6. It appears, from the agreed statement of facts and the ordinences set out therein, that the city of Brenham, under its charter, had authority to borrow money for general purposes, and did so borrow by selling its bonds to the amount of $15,000. The validity of a tax levied to pay the interest on said bonds is not affected by the subsequent appropriation of the money borrowed to an alleged unauthorized purpose. Nor is it competent to enjoin the collection of said tax on the ground of the invalidity of the bonds without making the holders of the bonds parties to the suit. (Bond v. Texas and Pacific Railway, 46 Texas, 316.) So far, it appears from the agreed statement, the tax of one-eighth of one per cent to pay interest and raise a sinking fund for the payment of said bonds, was valid.

7. The ordinances of said city creating a board of assessment to examine and revise the lists of property, after the same had been duly rendered to, and accepted and entered as satisfactory by the assessor and collector, were without authority and illegal.

The charter creates the office of assessor and collector, or makes it the duty of all property owners within the corporation to render to said assessor a complete inventory of their property subject to taxation, and plainly indicates that the value of the property.inventoried is to be fixed by the property owner and the assessor. (Special Laws of 1873, p. 3, art. 1; art 10, sec. 1, p. 12; p. 24, art. 3, sec. 1; p. 25, art. 4, sec. 1. See also city ordinance 306: "Whenever the party rendering property for assessment and the assessor cannot agree on the valuation of such property, the valuation is referred to a board of appraisement, appointed by the council, and composed of three commissioners, who are to be persons not connected with the city government, qualified voters and the owners of real estate in the city to the value of three thousand dollars." (Special Laws of 1873, p. 25, *supra*.) The charter makes the action of this board in assessing property final, but secures to the property owner the right of being heard before said board. In pursuance of this plainly marked out system, ordinance 306 of the city required the person rendering an inventory to affix to each item of property his valuation thereof, and if the same is satisfactory to the assessor and collector, he shall so render the inventory and enter said valuation on the assessment roll, but if said valuation is not satisfactory, he shall value the property and set his valuation in a column opposite the other, and refer both to the board of appraisement, who shall make a valuation. In June, 1879, however, an intermediate tribunal, styled the "committee on assessment," was organized under an ordinance of the council, whose duty it was made, after published notice of their time of meeting, to revise the list of the property of each person, and to fix the fair market value of the property on the list. The ordinance provides that the assessor shall enter on his rolls the valuation of property by this committee, and thereafter give the property owner dissatisfied with the valuation a right of appeal to the board of appraisement.

Appellant, Dwyer, inventoried and appraised his property in due form at $44,600, and that valuation was agreed to and received by the assessor; afterwards the committee of assessments, composed of two of the city council, without the actual knowledge of Dwyer, increased the valuation of his property to the aggregate sum of $74,120.

It is claimed that the power of the council was sufficient to the creation of this committee, and reference is made to several sections

of the charter, viz: one empowering the council " to provide by ordinance for the assessing and collecting of the taxes aforesaid," etc. (Special Laws of 1873, pp. 22, 23.)    Another authorizing them to "make all such rules and regulations, and ordain and pass all ordinances, as they may deem necessary to the levying, imposing, assessing and collecting of any of the taxes herein provided." (P. 24, Laws of 1873.)    Another authorizing them "to regulate the manner and mode of making out tax lists or inventories, and the appraisement of property therein," and "to fix the duties and define the powers of the assessor and collector, and adopt such measures as they may deem advisable to recover the assessment of all property within the limits of said city, and collect the tax thereupon."

These powers must be construed so as to be consistent with the system of assessment and appraisement marked out in the charter. The obvious design of the charter is that where the owner inventories and values his property, and that valuation is agreed to by the assessor, it shall not afterwards be disturbed.    The creation of a committee to revise the valuation thus agreed to is wholly irreconcilable with the positive directions of the charter conferring the power of revision on the board of appraisement, and upon them only in case the party rendering the property and the assessor cannot agree on the valuation.    Even the board of appraisement would have no jurisdiction to raise the valuation, except in case of disagreement.    Like the board of equalization acting under the laws in force in 1876, the board of appraisement had no general authority to change valuations.    (I. & G. N. R. R. Co. v. Smith, 54 Texas, 1–12.    See opinion of Attorney-General and circular from Comptroller's office copied in the opinion of the court in that case.    See also Burroughs on Taxation, p. 374, citing Placeville v. Wilcox, 35 Cal., 21.)

Our opinion is that the action of the committee of assessment was illegal and void.    The proper valuation of appellant's property was that affixed by him and accepted and agreed to by the assessor. The increased valuation of his property by the committee of assessment, amounting to $29,520, and the taxes assessed and collected of him on that sum, were illegal.

The judgment will be reversed, and in accordance with the agreement of the parties, judgment will be here rendered in favor of the plaintiff, Dwyer, and against the defendant, Hackworth, and his sureties on his refunding bond for the amount of taxes so wrongfully assessed and collected, with interest from July 9, 1881, at 8 per cent per annum, and for all costs of suit in this court and in the district court.