T. L. MARSALIS AND T. J. SAMS v. J. A. CREAGER ET AL.

No. 98.

1. **Title of Act — County Boundaries.** — Section 10 of the Act of April 22, 1879, providing, that before any county not already organized as a land district under existing law shall be recognized as such, the County Court shall cause its boundary lines to be surveyed and marked, and the field notes and maps of such survey duly recorded, returned to the General Land Office, as provided in that act, can not be held unconstitutional on the ground that its subject matter is not embraced in the title of the act, viz., "An act establishing and prescribing the manner of ascertaining the boundaries of counties."

2. **Organization of County as Separate Land District.** — Section 10 of the Act of April 22, 1879, was intended to require that the boundary lines of all unorganized counties should in future be well defined under its provisions before being recognized as a separate land district; while section 1 of the act was intended to apply to counties that may have been previously organized as separate land districts.

3. **Survey in Organized County not a Separate Land District, Invalid.** — W. county, which formed part of the C. land district, was organized in 1881, but it did not appear that the boundary lines of the county were ever surveyed and field notes thereof returned to the General Land Office under the Act of 1879. *Held*, that the location of a certificate on land therein, made upon application to and survey by the county surveyor of W. county in 1882, was void, and an adverse location made in 1883 through the district surveyor of the C. land district conferred the superior right to the land.

APPEAL from Wilbarger. Tried below before Hon. G. A. BROWN.

*W. W. Flood* and *Barrett & Eustis*, for appellant T. L. Marsalis.—Section 10 of the Act of April 22, 1879, is unconstitutional and void, being in violation of article 3, section 35, of the Constitution of 1876, requiring that no bill shall contain more than one subject, which shall be expressed in its title, said act being an act establishing and prescribing the manner of ascertaining the boundaries of counties, and said section 10 relates only to organizing land districts. 1 Sayles' Civ. Stats., art. 691e; Rev. Stats., arts. 3819, 3822, 3854; Holden v. The State, 1 Texas Ct. App., 244; San Antonio v. Gould, 34 Texas, 73; Sayles' Consts., 517, sec. 35, note 98.

*Joseph Hall*, for appellant T. J. Sams.—1. Upon the organization of a county and the election of all county officers, it is organized for surveying as well as judicial purposes, and becomes a separate land district. Sayles' Civ. Stats., arts. 670. 676, 671e, 3818, 3819, 3822, 3849; Cassin v. O'Sullivan, 61 Texas, 594, 595; Cox v. Railway, 68 Texas, 230, 231; Linn v. Scott, 3 Texas, 67; Peacock v. Hammond, 6 Texas. 550, 551; O'Shea v. Twohig, 9 Texas, 336; Clark v. Goss, 12 Texas, 395; Lumpkin v. Muncey, 66 Texas, 312.

2. When the application under the W. T. Eidson certificate number 1697, together with said certificate, was made to and filed with the surveyor of Wilbarger County on the 29th of April, 1882, covering the land in question, the defendant Sams then acquired an imperfect right to the land, and if the survey was made and field notes and certificate returned to the General Land Office within the time fixed by law, the imperfect right became perfect. 2 Sayles' Civ. Stats., arts. 3895, 3896, 3897, 3902, 3906, 3919, 3922, 4030; De Montel v. Speed, 53 Texas, 339; Edwards v. James, 13 Texas, 53; Ellis v. Batts, 26 Texas, 706; Holloway v. Holloway, 30 Texas, 164; Cassin v. O'Sullivan, 61 Texas, 594; Winsor v. O'Connor, 69 Texas, 579; Snider v. Methvin, 60 Texas, 487; Beal v. Alexander, 6 Texas, 541; Holman v. Chevaillier, 14 Texas, 339.

*Stephens & Huff*, for appellee J. A. Creager.— 1. The surveyor of Wilbarger County had no authority to receive the application for a survey of land, or to survey the same, until the boundary lines of Wilbarger County had been run and established and recorded in the county clerk's office, and returned to and filed in the General Land Office. Sayles' Civ. Stats., art. 691e; Rev. Stats., art. 3855; Cox v. Railway, 68 Texas, 226; O'Shea v. Twohig, 9 Texas, 336; Clark v. Goss, 12 Texas, 395.

2. Section 10 of an act passed by the Sixteenth Legislature, entitled "An act establishing and prescribing the manner of ascertaining the boundaries of counties," is not repugnant to the constitutional provision, " that no bill shall contain more than one subject, which shall be expressed in the title." The subject is establishing and ascertaining the boundadaries of counties, and as a penalty the Legislature may provide that counties failing to comply should not be a separate land district. Acts 16th Leg., sec. 10, p. 137; Rev. Stats., art. 3855; Sayles' Civ. Stats., art. 691e; Stone v. Brown, 54 Texas, 330; Giddings v. San Antonio, 47 Texas, 556; Austin v. Railway, 45 Texas, 267; Faehey v. The State, 11 S. W. Rep., 108; Breen v. Railway, 44 Texas, 306.

HEAD, ASSOCIATE JUSTICE.—Prior to October, 1881, Wilbarger County was unorganized, and constituted part of the Clay Land District. In October, 1881, said county organized and elected all its county officers, including a county surveyor, who qualified as required by law.

On the 28th of April, 1882, J. R. Nigh, county surveyor of Wilbarger County, received from the district surveyor of the Clay Land District a map of the surveys theretofore made in Wilbarger County, and a copy of all files, applications, and locations of lands in said county, all of which were filed in the surveyor's office in Wilbarger County on the 29th of April, 1882. No survey of any of the boundary lines of Wilbarger County was made prior to 1883.

Vol. II. Civil—24

On March 5, 1883, the Commissioners Court of Wilbarger County ordered the county surveyor to survey and establish the south and west boundary lines of that county. Before making this survey, notice was given the County Court of Baylor County, but no notice was given the County Court of Hardeman County, nor does it appear from the record whether or not said last named county was organized at this time so that such notice could be given.

In compliance with this order of the Commissioners Court of Wilbarger County, the surveyor of said county surveyed the south and west lines of same, and recorded the field notes thereof in the records of the surveyor's office on the 14th day of May, 1883, and a copy of this work was returned to the General Land Office, but was not accepted by the Commissioner on account of defects therein, and nothing further was done towards establishing the boundary lines of said county, as required by the Act of April 22, 1879.

On the 29th of April, 1882, appellant T. J. Sams, being the owner of Confederate certificate number 1697, issued to W. T. Eidson, filed the same with the surveyor of Wilbarger County, accompanied by an application signed by his father, C. A. Sams, to survey the land in controversy thereunder. A survey upon this file was made by said surveyor, and returned to the General Land Office July 26, 1882, where it remained until August 4, 1882, when the Commissioner, without having placed his file mark upon it, returned the field notes to the surveyor of Wilbarger County, because of defects therein, and because there was no evidence on file in his office that Wilbarger County had organized as a separate land district. This survey was again returned to the Land Office by the surveyor of Wilbarger County on October 13, 1882, and on October 23, 1882, the Commissioner again returned it to the surveyor on account of defects therein. On January 17, 1883, appellant Sams again returned this survey to the General Land Office, and on February 26, 1883, the Commissioner returned it to him, because the survey was incorrect. The survey was again returned to the General Land Office July 12, 1883, when it was marked "filed" by the Commissioner; but this filing was more than twelve months after the date of the survey, which was made May 5, 1882.

On November 25, 1882, appellee Creager, being the owner of Confederate certificate number 1419, issued to A. J. Williams, filed the same with the surveyor of Wilbarger County, accompanied with the proper application to survey the land in controversy; but before any survey was made, he having been advised by the Commissioner of the General Land Office that Wilbarger County was not a separate land district, and was still attached to the Clay Land District for surveying purposes, withdrew said certificate from the office of the county surveyor of Wilbarger County, for the purpose of filing the same in the office of the surveyor of the Clay Land District.

On the 17th of March, 1883, he filed said certificate with said last named surveyor, accompanied with the proper application to survey the land in controversy, and on the 29th of May, 1883, said surveyor made the survey, and the field notes were duly returned to the General Land Office July 14, 1883. The surveyor of Wilbarger County also assisted in making this survey, and recorded the field notes in his office. Upon this survey patent was issued to Creager on December 22, 1884.

On March 28, 1883, one J. K. P. Russell, being the owner of Confederate certificate number 1341, issued to E. J. Logsdon, filed the same with the surveyor of Wilbarger County, accompanied with the proper application to survey the land in controversy; and a survey was made by said surveyor under this file June 29, 1883, and filed in the General Land Office October 18, 1883. Appellant Marsalis claims under this location. The record does not show affirmatively that this last named certificate was ever filed with the county surveyor of Wilbarger County; but from the fact that the survey was made and returned to the General Land Office, we conclude that it was properly accompanied with the certificate.

Because the boundary lines of Wilbarger County had never been established as required by the Act of April 22, 1879, the Commissioner of the General Land Office refused to recognize the surveys made by the surveyor of said county, and issued the patent upon the survey made by the surveyor of the Clay Land District; and appellant Marsalis brought this suit in the court below as plaintiff, against appellant Sams and appellee Creager and others, to establish the priority of his claim by reason of the facts above set forth. Judgment was rendered in favor of appellees, from which this appeal is prosecuted both by the claimant under the Russell and the Sams locations.

It is contended by appellants, that section 10 of the Act of April 22, 1879, is unconstitutional, because said act embraces more than one subject, and the subject of this section is not expressed in the title thereto. The title of this act is as follows: "An act establishing and prescribing the manner of ascertaining the boundaries of counties." Then follows a full and complete revision of our law upon the subject of establishing the boundary lines of counties, and the manner in which they shall be surveyed; and section 10 provides, that "Before any county in this State not already organized as a land district under existing law shall be recognized as such, the County Court shall cause the boundary lines of the county to be surveyed and marked, and the field notes and map of such survey duly recorded and returned to the General Land Office as provided in this act." It is not contended that this section of the law had been complied with at the time the surveyor of Wilbarger County made the surveys under which appellants claim; but it is contended that

this section of the law is unconstitutional; and also, when construed in connection with section 1, the survey called for therein was not required to be made until it was ordered by the County Court or by the Commissioner of the General Land Office.

Without entering into an extended discussion of the question, we are of opinion that section 10 was sufficiently embraced within the subject and title of the act, and is therefore constitutional. The reasons which lead us to this conclusion will be found discussed at length in the cases of Railway v. Smith, 54 Texas, 10; Stone v. Brown, 54 Texas, 341; Day Co. v. The State, 68 Texas, 542. The subject of this act is the establishing of the boundary lines of the different counties in the State, and we think the Legislature in the same act could well provide the consequences to be attached to a failure to comply with its provisions.

We are also of opinion, that section 1 of the act was intended to apply to cases where the boundary lines of counties had never been established in compliance with its provisions, although they may have previously been organized as a separate land district; and section 10 was intended to require the boundary lines of all unorganized counties in future to be well defined under its provisions before being recognized as a separate land district.

It follows, therefore, from what we have said, that we are of opinion that the surveyor of Wilbarger County, at the time the surveys for both of the appellants were made, had no authority to make the same, and in such cases it has been held that his acts are void. Cox v. Railway, 68 Texas, 226. Article 3822, Sayles' Civil Statutes, provides, that "Any unorganized county or newly created district which may fail or refuse to organize as a separate land district as provided by law, shall continue to form a part of the district to which it was formerly attached," etc. From the findings of fact, it will be seen that Wilbarger County formerly belonged to the Clay Land District; and as appellee had his survey made by the surveyor of that district, the patent issued thereon constituted the superior right to the land.

A number of other interesting questions are presented by the record, but what we have said disposes of the entire case, and it will therefore be unnecessary for us to consider them.

Let the judgment of the court below be in all things affirmed.

*Affirmed.*

Delivered February 16, 1893.


A motion for rehearing was overruled.